UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID DARNELL NELSON, JR.,

                Plaintiff,

v.                                          Case No. 19-cv-1380-pp

DAQUELA M. PAYNE,
and LORI KNUTSMAN,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 7, 8) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      David Darnell Nelson, Jr., an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his rights were violated when the defendants, both of whom work in community corrections, took him into custody for an alleged supervision violation. Dkt. No. 1. This decision resolves the plaintiff's motion to proceed without prepaying the filing fee, dkt. no. 2, and his motions to appoint counsel, dkt. nos. 7, 8, and screens his complaint.

**I.    Motion for Leave to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

When the plaintiff filed his complaint, he also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. On October 15, 2019, the court issued an order concluding that the plaintiff did not have the ability to pay an initial partial filing fee. Dkt. No. 6. It explained, however, that if the plaintiff proceeded with the lawsuit and the court later dismissed it for being frivolous or malicious or for failing to state a claim, that dismissal could impact his ability to proceed without prepaying the filing fee in other cases. Id. at 2. The court gave the plaintiff the option to voluntarily dismiss the case within twenty-one days, in the event he was concerned about proceeding given the court's warning. Id. at 2-3. The plaintiff did not voluntarily dismiss the suit within twenty-one days. The court will grant his motion for leave to proceed without prepaying the filing fee. He must pay the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to

2

Case 2:19-cv-01380-PP   Filed 09/29/20   Page 2 of 17   Document 10

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint alleges that on July 15, 2019, he had an appointment with his probation agent, defendant Daquela M. Payne. Dkt. No. 1 at 2. He alleges that Payne "kidnapped" him and "held [him] hostage and held [him] against [his] will." Id. The plaintiff asserts that Payne did not tell the plaintiff that she intended to "lock [him] up in prison" for not attending two appointments with her and for not attending a program that she "forced" him to take. Id. at 2–3. The plaintiff alleges that defendant Lori Knustman was next to Payne, telling the plaintiff to cooperate "or they [would] use excessive use of force [on him]." Id. at 3. The plaintiff says that his agent (presumably Payne) and supervisor "to[ld] a officer to strip search [him] and hand cuff [him]." Id. The plaintiff alleges that "they"—he does not say who—forced him in a van and sent him to the Milwaukee Secure Detention Facility "[f]or allegations that are not violating the law or allegations that are not criminal." Id. The plaintiff says he did not violate any laws and did nothing criminal to be in prison. Id. The plaintiff says he wants to sue "them and everyone else responsible for false imprisonment, cruel and unusual punishment, use of excessive force, kidnapping and holding [him] hostage in a prison and or institution for DAI offender while [he is] a D.C.C. offender." Id. The plaintiff alleges retaliation, threatening him if he did not sign the rules of supervision (which he says he did because his agent and supervisor threatened to lock him up); he also says

4

the agent and supervisor recommended revoking him for two years for allegations that were not dangerous or criminal. Id. at 4.

The plaintiff has asked for a "cash reward for physical injury, mental injury, emotional injury." Id. at 4.

C.  Analysis

The complaint names Probation Officer Daquela M. Payne, Supervisor Lori L. Kunstman and Supervisor Ryan Ackerman as defendants. Dkt. No. 1 at 1. The complaint raises three potential claims: one based on his being taken into custody, one based on excessive force and one based on a strip search.

A claim for false arrest "sounds in the Fourth Amendment right to be free from seizure without probable cause." Patrick v. City of Chi., No. 18-2759, 2020 WL 5362160, at *8 (7th Cir. Sept. 8, 2020). "The Fourth Amendment protects not only against 'an initial arrest without probable cause,' but also any 'continued detention in its absence.'" Brown v. Hartman, No. 16-cv-337-HAB, 2020 WL 5076817, at *4 (N.D. Ind. Aug. 26, 2020) (quoting Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018)). When someone is on probation, however, "[a] probation officer needs only a reasonable suspicion that the probationer violated a probation term to issue an apprehension request." Alston v. City of Madison, 853 F.3d 901, 911 (7th Cir. 2017) (citing Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003)).[1]

---

[1] The Wisconsin Administrative Code provides that a probationer can be taken into custody for several reasons, including after an alleged violation of a condition of his supervision or for disciplinary purposes. Wis. Admin. Code §DOC 328.27(2).

The complaint implies that defendant Payne took the plaintiff into custody because he did not attend two appointments with her and did not attend a required program. If the plaintiff's conditions of supervision required him to attend appointments with his supervising agent and attend the required program, then Payne had reasonable suspicion under the Fourth Amendment—as well as authorization under the Wisconsin Administrative Code—to take the plaintiff into custody. Because the plaintiff does not state whether his conditions of supervision including attending appointments with his supervising agent or attending the program (whatever it was), the court cannot determine whether the plaintiff can state a Fourth Amendment claim for false arrest or false imprisonment.

The plaintiff says he wants to bring an excessive force claim, and indicates that defendant Lori Knustman was next to Payne telling the plaintiff that if he did not cooperate they would use excessive force. He also indicates that his agent and supervisor caused him to be strip-searched (which could be viewed as an excessive force claim), handcuffed and forced into a van. The court reviews an excessive force claim under the Fourth Amendment's objective reasonableness standard. Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015). An official's force must not exceed the risk the plaintiff posed at the time. Id. (citing Padula v. Leimbach, 656 F.3d 595, 602 (7th Cir.2011)). The plaintiff does not allege that Payne or Knustman used excessive force against him; he alleges only that Knustman *threatened* to use excessive force. Dkt. No. 1 at 3. He also alleges that his agent and supervisor caused him to be strip-searched

6

and handcuffed—the court assumes the agent is Payne, but the plaintiff does not identify the supervisor. He also says that "they" forced him into a van, but does not explain who forced him or how. Without these details the court cannot determine whether the plaintiff states a claim for excessive force, or against whom he states that claim.

The plaintiff's claim that he was strip-searched also raises a question of whether the defendants violated his right to bodily privacy under the Fourth Amendment. For convicted prisoners, courts must "assess the [strip] search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted the justification for initiating it, and the place in which it is conducted." Henry v. Hulett, 969 F.3d 769, 779 (7th Cir. Aug. 11, 2020) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). "To determine whether a search is reasonable, courts weigh 'the degree to which it intrudes upon an individual's privacy' against 'the degree to which it is needed for the promotion of legitimate governmental interest." Kingsley v. Monroe Cty. Justice Dep't, No. 20-cv-255-jdp, 2020 WL 3799166, at *2 (W.D. Wis. July 7, 2020) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). "'Any search conducted pursuant to [a] search condition of probation must . . . be carried out in a reasonable manner and only in furtherance of the purposes of probation.'" Id. (quoting Owens v. Kelley, 681 F.2d 1362, 1368-69 (11th Cir. 1982)). "The search may not be performed in an intimidating and harassing manner to carry out purposes that are unrelated to the probation's conviction or rehabilitation." Id. (citing Owens, 681 F.2d at 1369.

7

The plaintiff's complaint says only that he was strip searched—he does not say who searched him, how they searched him (visually? by conducting a cavity search?), where it was conducted or what the alleged purpose was of the search. Without this information, the court cannot determine whether the plaintiff has stated a claim for a violation of his Fourth Amendment privacy rights.

The plaintiff says he was kidnapped. In Wisconsin, kidnapping is a criminal offense. Wis. Stat. §940.31. Only the government can bring a criminal charge for kidnapping; a citizen has no private right to bring a civil action for kidnapping. If the plaintiff believes he was kidnapped, he should contact local law enforcement or the District Attorney's Office.

Finally, the plaintiff alleges retaliation against him for not signing the conditions of supervision. To prevail on a First Amendment retaliation claim, a plaintiff must show that he engaged in an activity protected by the First Amendment, that he suffered a deprivation likely to deter future activity protected by the First Amendment and that the protected activity was a motivating factor in the defendants' decision to retaliate. McDaniel v. Syed, No. 17-cv-1493, 2020 WL 5570401, at *10-11 (E.D. Wis. Sept. 17, 2020). The plaintiff says that he was retaliated against for failing to sign the conditions of supervision, but he also says he signed those conditions. It is not clear what protected activity he engaged in, or who retaliated against him or how.

The court also notes that the only defendants the plaintiff referenced by name in the complaint were Payne and Knutsman—he did not mention

8

Ackerman in the body of the complaint. The complaint appears to be a palimpsest—it appears that there was original writing in the complaint over which the plaintiff wrote, but some of the original writing remains. Perhaps the plaintiff did not mean to name Ackerman, or perhaps Ackerman was one of the un-named "supervisors" to which the plaintiff referred.

The court will give the plaintiff an opportunity to amend his complaint. If he believes that the probation officer did not have reasonable suspicion that he violated the conditions of his extended supervision, he should explain why—did his supervision conditions require him to mee with his supervising agent and did he miss those meetings? What was the required program, who required it and did he fail to attend it? If he believes anyone used excessive force against him—in detaining him, searching him, handcuffing him or putting him in the van—he needs to provide the court with details. Who arrested him? Who strip-searched him? What did they do in strip-searching him? Where did the strip search happen? Who handcuffed him, and why does he believe the force was excessive? What force was used in putting him in the van, and by whom?

The court also notes that some time after the filed the complaint, the plaintiff submitted a statement with "further information" about his case. Dkt. No. 9. In it, he complains that Assistant Regional Chief Peter J. Marik worked with defendants Payne and Knustman to keep him at the Milwaukee Secure Detention Facility. Id. at 1. He also believes that Neil Thorson, the administrative law judge who presided over his revocation, should not have revoked him. Id. The plaintiff also complains about the basis of his revocation

9

and says that his discharge date keeps getting changed and is incorrect. Id. at 1–2. Because the court is allowing the plaintiff to file an amended complaint, he may add more allegations if he believes his constitutional rights were infringed upon in other ways related to his revocation. The plaintiff should be aware, however, that challenging the fact that he is in prison or how long he will be in prison is not proper in a §1983 lawsuit. Those are issues must be raised in a *habeas corpus* petition. Heck v. Humphrey, 512 U.S. 477 (1994).

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its complaint form and instructions. The plaintiff must write the word "Amended" at the top of the first page of the form, before the word "Complaint." He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use

up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, rather than repeating in the amended complaint any of the facts from the original complaint that are necessary to his claims.

### III. Motions to Appoint Counsel

The plaintiff filed two motions asking the court to appoint counsel to represent him. Dkt. No. 7, 8. In the first motion, he also asks that all his cases be accepted as filed "from 2014–present or from 2018-2019." Dkt. No. 7 at 1–2. The court searched its docket and found that the plaintiff has filed four cases in this district. The court accepted Case No. 18-cv-220 for filing but dismissed it on March 3, 2020 because it was time-barred. Nelson v. Foster, Case No. 18-cv-220 at Dkt. No. 35 (E.D. Wis. March 3, 2020).[2] Nelson v. Gegare, *et al.*, 19-cv-510 is awaiting screening; the court hopes to address it soon. This order screens the complaint in this case. Finally, Nelson v. Social Security Administration, Case No. 19-cv-1387, is awaiting resolution of a pending motion to dismiss. Each of the complaints the plaintiff has sent to the court has been filed on the docket and the court either has addressed them or is in the process of addressing them.

---

[2] The plaintiff states that while he does not know if his lawsuits need a petition for writ of *habeas corpus*, his suit should not have been dismissed because he is suffering from mental illness, needs help and would like a lawyer. Dkt. No. 7 at 1-2. If the plaintiff wishes to challenge the dismissal of the lawsuit in Case No. 18-cv-220, he must file a separate document in that case, explaining why it should not have been dismissed.

11

In his second motion to appoint counsel, the plaintiff says that he is suffering from mental and physical illness. Dkt. No. 8. He indicates that if he doesn't get an attorney he will keep making mistakes; he asks the court to stop being negative and aggressive toward him. Id. He says he suffers from hypothyroidism, which includes symptoms such as fatigue, trouble concentrating, trouble thinking clearly, memory loss, forgetfulness, hair loss, weight gain, low tolerance to cold, constipation, depression, personality changes, tingling and prickling of hands and fee, muscle aches and weakness, confusion, incontinence, trouble moving and falling. Id. The plaintiff says he needs a lawyer for all his cases or they are going to be dismissed; he indicates that the court keeps dismissing his cases and doing him wrong, and asks the court to help him and to stop correcting him. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case,

12

does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least *three* lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

13

The plaintiff has not provided the court with any proof that he has tried to find an attorney on his own, so the court will deny the motions for that reason. Even if the plaintiff had attempted to find counsel himself, the court still would deny the motions. According to the plaintiff, he needs counsel because he suffers from hypothyroidism, dkt. no. 7 at 1, and because he is "not intelligent or smart," dkt. no. 8. His hypothyroidism causes fatigue and trouble concentrating, as well as depression, confusion, and muscle weakness, among other symptoms. Id. The plaintiff fears that his cases will be dismissed without an attorney.

The court understands that litigating a case—or, for the plaintiff, four cases—feels overwhelming. At this stage of litigation, the only thing the plaintiff is required to do is to explain to the court what each defendant did to him. He does need to cite to case law or do legal research. The plaintiff may address many of his concerns—fatigue, difficulty concentrating and focusing—by asking the court to give him more time to complete tasks. His concerns about not being "smart" enough are shared by many unrepresented plaintiffs—prisoners and non-prisoners alike. But the court has reviewed the plaintiff's submissions. He can communicate clearly and ask for what he needs. Failing to state a claim the first try is not uncommon; many plaintiffs must file amended complaints. If the plaintiff later finds himself unable to continue to litigate, he may renew his motion after he tries to find an attorney on his own. If he does renew his motions, he should be as specific as possible about the challenges he faces.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motions to appoint counsel. Dkt. Nos. 7, 8.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **October 23, 2020**. If the plaintiff files an amended complaint in time for the court to receive it by the end of the day on October 23, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not file an amended complaint in time for the court to receive it by the end of the day on October 23, 2020, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the **$350** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

15

The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff is reminded that it is his

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 29th day of September, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

17

Case 2:19-cv-01380-PP   Filed 09/29/20   Page 17 of 17   Document 10